CAROL L. WILLIAMS ET AL. *v.* WILLIAM T. BURNETT & CO., INC. ET AL.

[No. 2, September Term, 1982.]

*Decided June 28, 1983.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and ▌J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired) and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Steven P. Resnick, County Solicitor,* with whom were *Robert M. Pollock* and *Karen A. Murphy, Assistant County Solicitors,* and *Emile J. Henault, Jr.,* on the brief, for appellants.

*Warren K. Rich,* with whom were *Robert C. Prem, Richard E. Rice, Niles, Barton & Wilmer, Theodore G. Bloom* and *Goodman, Bloom & Cohen, P.A.* on the brief, for appellees.

ELDRIDGE, J., delivered the opinion of the Court.

This controversy arises out of comprehensive rezoning in Anne Arundel County, initiated in 1971 and concluded in 1976. Located within the County's fourth assessment district is a 29.8 acre parcel of land leased by William T. Burnett & Co., Inc. (Burnett). In 1956, this parcel was purchased by Burnett's lessor contingent upon rezoning from agricultural to industrial use. The rezoning occurred in 1956, and the purchase was then consummated. The property remained undeveloped until 1972, at which time Burnett completed construction of a foam manufacturing plant on a 9.1 acre portion of the property.

During the comprehensive rezoning process, and after the construction of the foam manufacturing plant, the County Office of Planning and Zoning and the County Planning Advisory Board submitted recommendations to the County

Council for the zoning classification of the Burnett property. The Planning and Zoning Office suggested placing the entire parcel in a heavy industrial zone, and the Planning Advisory Board suggested that the entire parcel be placed in a light industrial zone. Following public hearings, at which residents in the neighborhood of the Burnett property testified, the County Council in 1973 adopted a comprehensive rezoning ordinance for part of the fourth assessment district. This, ordinance placed approximately 9.1 acres of the Burnett property, containing the foam manufacturing plant, in a heavy industrial zone and placed the remaining portion, containing approximately 20.7 acres, in an R-1 residential zone.[1]

In 1978 Burnett, desiring to expand its industrial plant onto the land zoned residential, applied to the County Office of Planning and Zoning to have the 20.7 acre portion rezoned from residential to heavy industrial on the basis of an alleged mistake in the 1973 comprehensive rezoning. On January 4, 1979, the zoning hearing officer denied the reclassification request, and Burnett took an appeal to the Anne Arundel County Board of Appeals. During the pendency of the appeal to the Board of Appeals, the Anne Arundel County Council passed and the County Executive signed, on May 15, 1979, an amendment to § 2-100 of the Anne Arundel County Code. The amendment became effective on June 29, 1979. Section 2-100 (a), as amended by the 1979 ordinance, delineates the criteria to be followed by the County Board of Appeals when making a zoning reclassification decision. It provides, in pertinent part, as follows (emphasis added):

"Zoning classifications shall be granted or denied in accordance with appropriate zoning regulations, but no reclassifications shall be granted except on the basis of an affirmative finding that:

---

1. The R-1 classification permits residential development at one dwelling per acre, along with enumerated special exceptions. Anne Arundel County Code §§ 13.304 and 13.304.1.

(1) There was a mistake in the comprehensive rezoning map, or that the character of the neighborhood has changed to such an extent that the zoning map should be changed; and

*(2) The reclassification conforms to the approved Anne Arundel County General Development Plan in relation to land use, number of dwelling units or type and intensity of nonresidential buildings, and location; and*

(3) Transportation facilities, water and sewerage systems, storm drainage systems, schools and fire suppression facilities adequate, as defined in section 13-133, to serve the uses allowed by reclassification are either existing or programmed for construction; and

(4) There is compatibility between the uses of the property as reclassified and the surrounding land uses, so as to promote the health, safety and welfare of the present and future inhabitants of the county."

Subsections (a)(2), (a)(3) and (a)(4) constitute the material added by the 1979 amendment. Subsection (a)(2), which is the provision involved in the present case, prohibits a reclassification unless the Board of Appeals finds that the requested reclassification conforms to the County General Development Plan.

The General Development Plan in existence at the time of the enactment of § 2-100 (a)(2), and still existing today, was approved and enacted into law on July 18, 1978. This plan was prepared in consideration of the County's anticipated growth and was not a complete incorporation of the comprehensive zoning classifications. Under the plan, the 20.7 acre portion of Burnett's property was placed in a classification permitting uses greater than those allowed in an R-1 residential classification but not permitting industrial uses.

Following enactment of § 2-100 (a)(2), the Board of Appeals conducted four separate hearings on Burnett's reclassification petition. Numerous exhibits were intro-

duced and a great deal of testimony was taken, including testimony to the effect that the requested reclassification would not comply with the General Development Plan. On September 19, 1979, the Board issued an order reversing the hearing officer's decision and granting Burnett's reclassification request.

In its order, the Board of Appeals found that the County Council had made a mistake in the 1973 comprehensive rezoning when it changed the zoning of a portion of Burnett's property from industrial to residential. The Board of Appeals, however, found that the requested reclassification would not conform to the General Development Plan. Nevertheless, it granted the reclassification, stating:

> "Although industrial zoning of this [Burnett's] property is not consistent with the current General Development Plan . . . , the fact the Board finds the County Council erred in that zoning negates the necessity of conformance with the new plan."

It is noteworthy that in finding that the reclassification need not conform to the 1978 General Development Plan, the Board of Appeals made no reference to § 2-100 (a).

Several neighborhood residents who had testified and presented evidence before the Board of Appeals in support of residential zoning for Burnett's 20.7 acre portion, took an appeal from the Board's decision to the Circuit Court for Anne Arundel County. Initially the circuit court remanded the case to the Board of Appeals, holding that, in light of § 2-100 (a)(2), the Board erred in concluding that a reclassification need not conform to the General Development Plan.

Burnett, however, filed a timely motion for reconsideration pursuant to Maryland Rule 625, raising three contentions. First, it argued that § 2-100 (a)(2) was invalid because it conflicted with the Anne Arundel County Charter. Second, Burnett claimed that even if § 2-100 (a)(2) were valid under the charter, the County Council did not intend that it be applied "retroactively" to a reclassification

based on a "mistake" in comprehensive rezoning made in 1973, prior to the effective date of the statute. Finally, Burnett argued that if § 2-100 (a)(2) were applied to a reclassification decision based on a 1973 mistake in the comprehensive rezoning, such "retroactive" application would violate the federal and state constitutions. Subsequent to Burnett's motion for reconsideration, Anne Arundel County intervened as a party appellant.

Thereafter the circuit court held that § 2-100 (a)(2) was not intended to apply "retroactively" to a reclassification decision grounded upon a mistake in comprehensive rezoning which occurred prior to the effective date of that statute. The court further ruled that the Board of Appeals was warranted in finding a mistake in 1973 by the County Council in rezoning Burnett's 20.7 acre parcel from industrial use to residential use. Consequently, upon reconsideration, the circuit court upheld the Board of Appeals' decision.

Anne Arundel County and the individual opponents of the reclassification appealed to the Court of Special Appeals, and that court affirmed the judgment of the circuit court in an unreported opinion. The Court of Special Appeals agreed with the trial court, holding that § 2-100 (a)(2) was not intended to be applied "retroactively" to a reclassification based on a mistake in the 1973 comprehensive rezoning. The Court of Special Appeals also held that the trial court properly upheld the Board of Appeals' finding of a mistake in the Council's 1973 comprehensive rezoning.

Anne Arundel County and the individual opponents petitioned this Court for a writ of certiorari, presenting two issues. The first issue is whether the County Council intended that § 2-100 (a)(2) apply to a reclassification based on a mistake in a comprehensive rezoning plan enacted prior to § 2-100 (a)(2). The second issue is whether the trial court and the Court of Special Appeals erred in upholding the decision of the Board of Appeals finding a mistake in the 1973 comprehensive rezoning. No cross-petition for a writ of certiorari was filed by Burnett.

We granted the petition but in our order limited review to the statutory interpretation question of whether § 2-100 (a)(2) applies to a reclassification based on a mistake in the 1973 comprehensive rezoning. Consequently, the issue of whether the 1973 residential zoning of a portion of Burnett's property constituted a mistake is not before us.[2] Moreover, even though Burnett has argued that § 2-100 (a)(2) is invalid under the county charter and the state and federal constitutions, no question concerning the validity of that statute is now before us. See Maryland Rule 813 a.

In holding that § 2-100 (a)(2) does not apply to a reclassification based on a mistake in a comprehensive rezoning plan enacted prior to § 2-100 (a)(2), both the circuit court and the Court of Special Appeals relied on the principle of statutory construction that "the presumed intent [of the legislative body] is that statutes operate prospectively," *St. Comm'n On Human Rel. v. Amecom Div.,* 278 Md. 120, 123-124, 360 A.2d 1 (1976). In our view, this reliance by both courts below was misplaced. Section 2-100 (a)(2) does not change or affect in any way the 1973 comprehensive rezoning ordinance or the status of property under that ordinance. Instead, § 2-100 (a)(2) regulates the action of the Board of Appeals in the administrative reclassification process. It operates solely upon the Board's reclassification decisions, prohibiting reclassifications which do not conform to the Anne Arundel County General Development Plan. Section 2-100 (a)(2) became effective on June 29, 1979. A construction of § 2-100 (a)(2) that would make it applicable to reclassifications by the Board prior to June 29, 1979, would violate the principle that statutes should not be construed to operate retroactively. But applying a June 1979 statute to a reclassification on September 19, 1979, is not a retroactive application of the statute.

---

2. For a discussion of the principles to be applied in determining whether there is a mistake in comprehensive rezoning, see our recent opinion, written by Judge Davidson, in Howard County v. Dorsey, 292 Md. 351, 438 A.2d 1339 (1982).

The language of § 2-100 (a) itself discloses that the statute was intended to be applicable to reclassifications based on mistakes in comprehensive rezoning ordinances enacted prior to June 1979. Section 2-100 (a)(1) refers to "a mistake in *the* comprehensive rezoning map" (emphasis added). When § 2-100 (a) was enacted, as well as today, the only comprehensive rezoning map effective in Anne Arundel County was the map adopted during the period ending in 1976. The reference to "the" comprehensive rezoning map necessarily was to a map enacted prior to June 1979.

Moreover, to construe § 2-100 (a) as inapplicable to comprehensive rezoning adopted by the County Council prior to June 1979 would render the statute largely nugatory. It is a settled principle that, if reasonably possible, a statute should be construed "so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory." *Supervisor v. Southgate Harbor,* 279 Md. 586, 590, 369 A.2d 1053 (1977). *See Holmes v. Crim. Injuries Comp. Bd.,* 278 Md. 60, 65-66, 359 A.2d 84 (1976); *Gillespie v. R & J Constr. Co.,* 275 Md. 454, 457, 341 A.2d 417 (1975); *Prince George's Co. v. White,* 275 Md. 314, 319, 340 A.2d 236 (1975), and cases there cited. As pointed out above, when § 2-100 (a) was enacted in 1979, and at the present time, the only comprehensive rezoning plan was the plan enacted during the period ending in 1976. If § 2-100 (a)(2) were construed as inapplicable to a reclassification based on mistake in the 1971-1976 comprehensive rezoning, the provision would have been wholly ineffective when enacted in 1979, and it would be ineffective today. Under such construction, § 2-100 (a)(2) would remain a meaningless provision until the County Council, sometime in the future, adopted a new comprehensive rezoning plan. Under settled principles, such a construction should be avoided if possible.[3]

---

**3.** Furthermore, the preamble to § 2-100 (a) indicates that the County Council was addressing and correcting an existing problem, and was not just legislating for future comprehensive rezoning plans. The preamble states in relevant part as follows:

We hold, therefore, that § 2-100 (a)(2) was applicable to the Board's reclassification decision concerning the 20.7 acre portion of Burnett's property. Thus, under § 2-100 (a)(2), a condition for granting the reclassification was that it conform to the General Development Plan. The Board specifically found that the requested reclassification would not conform to the General Development Plan. In fact, both before the Board and in the circuit court, Burnett expressly conceded that industrial zoning of the 20.7 acre portion would be inconsistent with the General Development Plan. Consequently, unless § 2-100 (a)(2) is invalid as argued by Burnett, the decision of the Board of Appeals must be reversed. Upon remand, the only matter remaining to be decided by the circuit court is whether § 2-100 (a)(2) is invalid under the county charter and the state and federal constitutions.

> *Judgment of the Court of Special Appeals reversed and case remanded to that Court with directions to reverse the judgment of the Circuit Court for Anne Arundel County and to remand the case to the Circuit Court for further proceedings consistent with this opinion.*
> *Respondent to pay costs.*

---

"WHEREAS, Interpretations of the 'change or mistake rule' have allowed rezoning, even though the rezoning may not be consistent with public policy; and

WHEREAS, There is a need for legislative guidelines upon which to base the granting of rezoning petitions; . . . ."